## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DESERT SUNLIGHT 300, LLC, a<br>Delaware Limited Liability Company;<br>DESERT SUNLIGHT 250, LLC, a<br>Delaware Limited Liability Company; and<br>NEXTERA ENERGY RESOURCES, LLC, a<br>Delaware Limited Liability Company<br><br>   700 Universe Blvd.<br>   Juno Beach, FL  33408<br><br>          Plaintiffs,<br><br>      v.<br><br>UNITED STATES DEPARTMENT OF THE<br>TREASURY; JACOB LEW, in his capacity<br>as Secretary of the Treasury; and DAVID<br>LEBRYK, in his capacity as Fiscal Assistant<br>Secretary of the Department of the Treasury<br><br>   1500 Pennsylvania Ave, NW<br>   Washington, DC  20220<br><br>          Defendants. | Civil Action No. 1:15-cv-1051 |

## <u>COMPLAINT</u>

Plaintiffs, DESERT SUNLIGHT 300, LLC, 700 Universe Blvd., Juno Beach, FL 33408

("DS 300"); and DESERT SUNLIGHT 250, LLC, 700 Universe Blvd., Juno Beach, FL 33408

("DS 250"); and NEXTERA ENERGY RESOURCES, LLC, 700 Universe Blvd., Juno Beach,

FL 33408  ("NEER"), bring this action for a writ of mandamus and for declaratory and

injunctive relief under the Administrative Procedure Act to enforce the statutorily mandated 60

day period for awarding and paying grants ("1603 Grant" or "1603 Grants") pursuant to Section

1603 of the American Recovery and Reinvestment Act of 2009 (Pub. L. 111-5) ("ARRA"); and, for their causes of action, allege as follows:

## NATURE OF THE ACTION

1.      Section 1603 of the ARRA provides for, and appropriates funds to pay, 1603 Grants to encourage investment in renewable energy projects, including solar energy projects.

2.      Section 1603 mandates the prompt reimbursement of 30% of a project's cost basis (as determined for federal income tax purposes).

3.      Section 1603 imposes non-discretionary requirements that the Secretary of the Treasury ("Secretary") award and pay 1603 Grants within a statutorily mandated 60 day period. The statutory mandates are unequivocal:  Section 1603(a) provides that "[u]pon application, the Secretary of the Treasury <u>shall</u>, subject to the requirements of this section, provide a grant to each person who places in service specified energy property to reimburse such person for a portion of the expense of such property" and Section 1603(c) provides that "[t]he Secretary of the Treasury <u>shall</u> make payment of any grant under subsection (a) during the 60 day period beginning on the later of— (1) the date of the application for such grant, or (2) the date the specified energy property for which the grant is being made is placed in service."  American Recovery and Reinvestment Act of 2009, Pub. L. No. 111-5, §1603, 123 Stat. 115, 364-66 (2009)(emphasis added).

4.      The Secretary has unlawfully withheld and unreasonably delayed, beyond the mandated 60 day periods, final actions on 1603 Grant applications filed by Plaintiffs DS 250 and DS 300 on March 19, 2014; March 28, 2014; April 22, 2014; July 1, 2014; December 19, 2014; and December 22, 2014 ("Plaintiffs' Applications").

5.      As of the date of this Complaint, the Secretary has not taken final action on any of Plaintiffs' Applications.  The Secretary has made only partial, interim payments on April 28 and 29, 2015 and failed to provide reasons for the amounts of those payments.

6.      In lieu of awarding and fully paying 1603 Grants within 60 days, as required by the statute, the Secretary repeatedly has sought additional information from Plaintiffs DS 300 and DS 250 and then withheld final agency action on the ground that Plaintiffs' Applications remain under review.  The Secretary has sought information that has nothing to do with the renewable energy projects that are the subject of Plaintiffs' Applications.  The statute does not allow the Secretary to delay awarding and paying a 1603 Grant beyond the 60 day mandate in order to complete an audit-like, pre-grant review of an applicant's 1603 Grant application, let alone a review of information that is immaterial to a particular 1603 Grant application.

7.      Based on the Secretary's practice and policies for evaluating 1603 Grant applications, it is apparent that the Secretary will continue to withhold 1603 Grants and fail to make timely awards and full payments unless the Court takes action.

8.       This action arises under Section 1603 of the ARRA, the Mandamus and Venue Act of 1962 (28 U.S.C. § 1361), the Administrative Procedure Act (5 U.S.C. §§ 701-706) ("APA"), and the Declaratory Judgment Act (28 U.S.C. § 2201) for (1) a writ of mandamus and declaratory and injunctive relief requiring Defendants to comply with their mandatory, non-discretionary obligations under Section 1603 and to make immediate and full payments of the 1603 Grants already due and owing to Plaintiffs DS 300 and DS 250 and (2) prospective declaratory and injunctive relief that, *inter alia*, all 1603 Grant payments due to Plaintiffs DS 300 and DS 250, and/or other direct or indirect subsidiaries of Plaintiff NEER, or partnerships in which Plaintiff NEER holds an interest, pursuant to present or future 1603 Grant applications by

such subsidiaries or entities owned by such partnerships, must be made in full within the

mandatory 60 day period set forth in ARRA Section 1603(c).

## JURISDICTION

9.      The cause of action is a claim for mandamus and declaratory and injunctive relief

under the APA to enforce the requirements of ARRA Section 1603.  Jurisdiction is conferred on

this Court by 28 U.S.C. § 1331 (federal question jurisdiction) and 28 U.S.C. § 1361 (mandamus).

## VENUE

10.      Venue is proper in this Court pursuant to 28 U.S.C § 1391(e).

## PARTIES

11.      Plaintiff DS 250 is a limited liability company ("LLC") organized under the laws

of Delaware.  DS 250 acquired and placed in service, and currently owns and operates, a 250-

MW solar electric generating facility located in and near Desert Center, California, which

utilizes "specified energy property" (within the meaning of ARRA Section 1603(d)) eligible for

the 1603 Grants, as more fully described below.

12.      Plaintiff DS 300 is an LLC organized under the laws of Delaware.  DS 300

acquired and placed in service, and currently owns and operates, a 300-MW solar electric

generating facility located in and near Desert Center, California, which utilizes "specified energy

property" (within the meaning of ARRA Section 1603(d)) eligible for the 1603 Grants, as more

fully described below.

13.      Plaintiff NEER is an LLC organized under the laws of Delaware.  NEER is

owned indirectly by a publicly traded company.  NEER is in the business of developing and

acquiring wind and solar electric generating facilities through subsidiaries and partnerships such

as DS 300, DS 250, and Desert Sunlight (described in paragraph 14).  NEER intends to file

4

additional 1603 Grant applications in the future.  Therefore, NEER is and will be directly and adversely affected in its current and future business operations by Defendants' failure timely and fully to make 1603 Grants and payments within the Section 1603(c) 60 day period.

14.     Desert Sunlight Investment Holdings, LLC ("Desert Sunlight"), is an LLC organized under the laws of Delaware.  Desert Sunlight owns the membership shares of DS 250 and DS 300 indirectly, through a wholly owned LLC.  The ownership interests in Desert Sunlight are held as follows: 50% by NextEra Desert Sunlight Holdings, LLC, a disregarded entity indirectly owned by Plaintiff NEER through a chain of disregarded entities; 25% by EFS Desert Sun, LLC, an indirect subsidiary of a publicly traded company; and 25% by Summit Solar Desert Sunlight, LLC, which is also an indirect subsidiary of another publicly traded company.

15.     Defendant United States Department of the Treasury ("Treasury") is the executive agency of the United States government that administers the 1603 Grant program under Section 1603 of ARRA.  Responsibility for that administration is delegated to the Office of the Fiscal Assistant Secretary.

16.     Defendant Jacob Lew is the Secretary of the Treasury. Secretary Lew is the official ultimately responsible for compliance with the 1603 Grant program under Section 1603 of ARRA.

17.     Defendant David Lebryk is the Fiscal Assistant Secretary at Treasury.  The Fiscal Assistant Secretary is responsible for issuing a letter reflecting the amount of the 1603 Grant awarded to the applicant.

## STATUTORY AND REGULATORY FRAMEWORK
## OF THE 1603 GRANT PROGRAM

18.     Congress enacted the ARRA in 2009.  Section 1603 of the ARRA is part of a comprehensive scheme to provide expeditious funding for investments in energy security and to reinvigorate the struggling economy.  This scheme provides two alternative means to provide notionally identical federal funding to support such investments.

19.     ARRA provides, in part, that a taxpayer may claim an investment tax credit ("ITC") under Sections 38, 46, and 48 of the Internal Revenue Code (26 U.S.C.), as amended to the years here in issue ("Code"), for an amount equal to 30% of a taxpayer's tax basis in certain "energy property" as defined in Section 48 of the Code.  An ITC provides a dollar-for-dollar reduction in income taxes otherwise owed by a taxpayer.

20.     An investor with a current tax liability that equals or exceeds the allowable ITCs may obtain the monetary benefit of ITCs by filing appropriate forms and required accompanying statements with its duly signed and attested federal income tax return.  On post-filing examination of the taxpayer's tax returns, the IRS may challenge the taxpayer's entitlement to all or part of the ITCs on factual or legal grounds.

21.     Congress recognized that many investors would not be able to benefit fully from the ITC because they would not have a current tax liability that equaled or exceeded the allowable ITC.  In order to incentivize energy investments, Congress enacted Section 1603 of the ARRA as an alternative to self-assessing ITCs by claiming them on a tax return.  Section 1603 provides for grants and payments of amounts that are computed on the same basis as ITCs.  At the investor's election, Section 1603 provides a grant for "specified energy property" (as defined in ARRA Section 1603(d)), including qualified solar energy facilities as defined in Section 45(d)(4) of the Code.

22.     The DS 250 and DS 300 solar energy facilities at issue are specified energy property under these statutory provisions and qualify for 1603 Grants.

23.     For the solar energy property constructed and placed in service by DS 300 and DS 250, the 1603 Grant amount is equal to 30% of the property's tax basis, which is the same amount as the total ITCs that would be allowed to a taxpayer electing to claim ITCs rather than Section 1603 grants.

24.     ARRA Section 1603(c) mandates that Treasury "shall make payment" of a 1603 Grant "during the 60-day period beginning on the later of (l) the date of the application for such grant, or (2) the date the specified energy property for which the grant is being made is placed in service."

25.     In ARRA Section 1603(i), Congress specifically appropriated "such sums as may be necessary to carry out this section."

26.     Despite Congress's intent to make Section 1603 Grants a readily available alternative funding mechanism for investors, despite the statutory mandate to make 1603 Grants within 60 days, and despite a specific appropriation for that purpose, Defendants have repeatedly failed to make required grants and full payments to DS 250 and DS 300 within the statutory 60 day period.

27.     Defendant Treasury has issued the following guidance ("Guidance") in connection with ARRA Section 1603:

a.  Payments for Specified Energy Property in Lieu of Tax Credits under the American Recovery And Reinvestment Act Of 2009 July 2009 ("Program Guidance 2009");

b.  Payments for Specified Energy Property in Lieu of Tax Credits under the American Recovery And Reinvestment Act Of 2009 July 2009/ Revised March 2010 ("Program Guidance 2010");

c.  Payments for Specified Energy Property in Lieu of Tax Credits under The American Recovery And Reinvestment Act Of 2009 July 2009/Revised March 2010/Revised April 2011 ("Program Guidance 2011").

28.  The Guidance requires that certain documents be submitted with 1603 Grant applications.  The documentation called for by the Guidance is much more detailed than correlative documentation required to be filed with a tax return claiming an ITC.

29.  Nevertheless, Plaintiffs DS 300 and DS 250 provided all of the documentation called for by the Guidance with their respective 1603 Grant applications.

30.  The Guidance provides that 1603 Grant applications should be signed and filed under penalties of perjury.  1603 Grant applications by Plaintiffs DS 300 and DS 250 were properly signed and attested to.

31.  1603 Grants are made subject to terms and conditions, available at http://www.treasury.gov/initiatives/recovery/Documents/energy-terms-and-conditions.pdf, that advise applicants that, *inter alia*, 1603 Grants will be made based on the information contained in the relevant applications and that Defendant Treasury may recover amounts later determined to be inaccurate.  The statute of limitations on actions to investigate an applicant's legal and factual basis for claiming 1603 Grants and recover improperly claimed amounts is six years, as compared to three years allowed to examine and deny ITCs. Thus, the terms of the 1603 Grants provide Defendants with the ample time and opportunity to examine, challenge, and recover amounts that are erroneously paid as Section 1603 grants.

32.     Nevertheless, Program Guidance 2009, p. 4, Program Guidance 2010, p. 4 and Program Guidance 2011, p. 4, each provides that "[i]n cases where an applicant has not submitted sufficient information upon which a determination can be based, the applicant will be so notified and given 21 days from the date of the notice to submit additional information."  The Guidance further provides that "[i]f additional information is not received within the 21 day period, the application will be denied."   This language in the Guidance is not found anywhere in ARRA Section 1603 and is in direct conflict with ARRA Section 1603(c) to the extent that it results in a delay in payment beyond the 60 day statutory period.  It is also in conflict with Congress's intent to provide a prompt reimbursement of a portion of the cost of specified energy property as an alternative to ITCs.

## FACTUAL ALLEGATIONS

33.     Before the sale transaction described below, First Solar Development, Inc. ("First Solar"), a wholly owned subsidiary of First Solar, Inc., a publicly traded company, owned (indirectly, through a controlled entity) 100% of the membership interests of Plaintiffs DS 300 and DS 250.

34.     First Solar is not related to or affiliated with any of the Plaintiffs or any direct or indirect subsidiary, or other controlled entity, of Plaintiffs.  First Solar is not related to or affiliated with any entity owning (directly or indirectly) any stock or other interest in DS 250, DS 300, or Desert Sunlight.

35.     On September 29, 2011, before the filing of Plaintiffs' Applications, First Solar sold its ownership interest in the membership shares of DS 300 and DS 250 to NextEra Desert Sunlight Holdings, LLC and EFS Desert Sun, LLC.  On September 27, 2012, EFS Desert Sun,

LLC assigned one-half of certain of its rights and obligations to Summit Solar Desert Sunlight, LLC.

36.     The amount of a 1603 Grant is 30% of the cost basis for federal income tax purposes of the subject specified energy property.  The applicable tax basis for the specified energy property to which Plaintiffs' Applications relate is the portion of the amount paid to First Solar for DS 250 and DS 300 that is allocable to the basis of the specified energy property held by them at the time of the sale.

37.     DS 250 and DS 300 filed the following 1603 Grant applications before December 31, 2016, as required by ARRA Section 1603(j), claiming 1603 Grants in the total amount of $426,952,286 (i.e., 30% of the total tax basis ($1,423,174,286) in its qualified assets) on the dates and in the amounts set forth below:

| Block Installation | Phase | Grant Eligible Property | Grant Sought | Date of Application |
|---|---|---|---|---|
| Blocks 1,2, 10 & 11 | DS 300 | $495,994,393 | $148,798,318 | March 19, 2014 |
| Blocks 16, 17, & 20 | DS 250 | $316,739,728 | $95,021,918 | March 19, 2014 |
| Block 3 | DS 300 | $137,163,425 | $41,149,028 | March 28, 2014 |
| Block 4 | DS 300 | $103,022,853 | $30,906,856 | March 28, 2014 |
| Block 12 | DS 250 | $138,260,759 | $41,478,228 | April 1, 2014 |
| Block 13 | DS 250 | $138,160,180 | $41,448,054 | April 22, 2014 |
| Block 14 | DS 250 | $93,832,947.71 | $28,149,884 | July 1, 2014 |
| **Total** | | **$1,423,174,286** | **$426,952,286** | |

38.     DS 250 filed the following 1603 Grant applications on December 19, 2014, which is before December 31, 2016, as required by ARRA Section 1603(j), claiming 1603 Grants in the total amount of 72,300,824 (i.e., 30% of the total tax basis ($241,002,746) in its qualified assets) on the dates and in the amounts set forth below:

| Block Installation | Phase | Grant Eligible Property | Grant Sought | Date of Application |
|---|---|---|---|---|
| Block 19 | DS 250 | $89,067,781 | $26,720,334 | December 19, 2014 |
| Block 15 | DS 250 | $50,835,550 | $15,250,665 | December 19, 2014 |
| Block 18 | DS 250 | $101,099,415 | $30,329,825 | December 19, 2014 |
| **Total** | | **$241,002,746** | **$72,300,824** | |

39.     DS 300 filed the following 1603 Grant applications on December 22, 2014, which is before December 31, 2016, as required by ARRA Section 1603(j), claiming 1603 Grants in the total amount of $115,572,640 (i.e., 30% of the total tax basis ($385,242,133) in its qualified assets) on the dates and in the amounts set forth below:

| Block Installation | Phase | Grant Eligible Property | Grant Sought | Date of Application |
|---|---|---|---|---|
| Block 5 | DS 300 | $86,450,957 | $25,935,287 | December 22, 2014 |
| Block 6 | DS 300 | $86,869,461 | $26,060,838 | December 22, 2014 |
| Block 7 | DS 300 | $69,427,298 | $20,828,189 | December 22, 2014 |
| Block 8 | DS 300 | $64,917,532 | $19,475,260 | December 22, 2014 |
| Block 9 | DS 300 | $77,576,885 | $ 23,273,066 | December 22, 2014 |
| **Total** | | **$385,242,133** | **$115,572,640** | |

40.     Plaintiffs DS 250 and DS 300 attached to their applications all documentation called for by the Guidance and application instructions to support the specified energy property's cost basis as claimed, including a detailed breakdown of all costs included in the basis. Additional supporting documentation, such as contracts, copies of invoices, and proofs of payment were retained and furnished to Defendant Treasury on request, as set forth in the Guidance.

41.     DS 250 and DS 300 retained Deloitte & Touche LLP ("Deloitte") to perform an independent examination to confirm that the eligible cost basis that DS 250 and DS 300 set forth in their applications to Defendant Treasury were correct.  Deloitte issued an independent accountant's certification for each block, concluding that the eligible cost basis for DS 250 and

DS 300, respectively, "had been determined in accordance with the general rules for determining the basis of property for federal income tax purposes."  This accountant's certification was submitted to Defendant Treasury by DS 250 and DS 300, respectively, with their applications for 1603 Grants.

42.     On April 2, 2014; May 7, 2014; July 3, 2014; and October 9, 2014, Defendant Treasury requested additional information with respect to the 1603 Grant applications submitted by Plaintiffs DS 250 and DS 300.  In its inquiry dated October 9, 2014, Defendant Treasury sought the following information, all of which pertains to other unrelated NEER projects and is completely irrelevant to the DS 300 and DS 250 projects:

a.     Documents such as the engineering, procurement and construction contracts, the purchase and sale agreements, membership interest purchase and sale agreement, and project financial models pertaining to the Silver State South solar power project.  The Silver State South transaction closed in May 2014, over two years after the closing of the transaction involving DS 250 and DS 300, and construction has just commenced on the Silver State South facility.. Plaintiff NEER has yet to file a 1603 Grant application on behalf of Silver State South and has until December 31, 2016 to submit 1603 Grant applications.

b.     Documents as to projects pertaining to unsuccessful bids regarding pipeline projects.  This request seeks information on projects that will never be built and for which 1603 Grant applications will never be filed.

43.     On March 27, 2015, Plaintiffs' representatives met with Defendants' representatives to discuss Plaintiffs' Applications.

44.     During the March 2015 meeting, Defendants' representatives were informed that Plaintiffs DS 300 and DS 250 have approximately $400,000,000 worth of debt-service obligations to creditors, including the Department of Energy, that are due in October 2015. Plaintiffs DS 300 and DS 250 are relying on the grant proceeds to satisfy the debt obligations.

45.     During the March 2015 meeting, Defendants' representatives demanded that the additional information referenced in paragraph 42 be provided before Defendants take final action on the past-due grants.

46.     On April 28 and April 29, 2015, as to the following applications, Plaintiffs DS 300 and DS 250 received notifications ("Notifications") from Treasury that the following partial Grant awards were made:

| Block(s) | Application Filed | Application Amount | Partial Grant award |
|---|---|---|---|
| 16, 17, 20 | 3/19/2014 | 95,021,918 | 50,190,793 |
| 1, 2, 10, 11 | 3/19/2014 | 148,798,318 | 83,909,097 |
| 3 | 3/28/2014 | 41,149,028 | 24,941,607 |
| 4 | 3/28/2014 | 30,906,856 | 18,827,509 |
| 12 | 4/1/2014 | 41,478,228 | 24,880,773 |
| 13 | 4/22/2014 | 41,448,054 | 25,002,441 |
| 14 | 7/1/2014 | 28,149,884 | 17,237,542 |
| 5 | 12/22/2014 | 25,935,287 | 15,826,671 |
| 6 | 12/22/2014 | 26,060,838 | 15,831,538 |
| 7 | 12/22/2014 | 20,828,189 | 12,770,352 |
| 8 | 12/22/2014 | 19,475,260 | 11,899,204 |
| 9 | 12/22/2014 | 23,273,066 | 14,098,975 |
| 15 | 12/19/2014 | 15,250,665 | 9,189,288 |
| 18 | 12/19/2014 | 30,329,825 | 18,275,236 |
| 19 | 12/19/2014 | 26,720,334 | 16,100,337 |
| **Total** | | **614,825,749** | **358,981,363** |

47.     The Notifications confirm that the interim payments are not final agency actions:

At the applicant's request, we are issuing payment based on the information that is available to date and prior to completing our evaluation of the properties' claimed

eligible basis. The applicant has not fully responded to questions and requests for information necessary to a final assessment of the applicant's claim.  Thus, this interim payment reflects the maximum amount payable at this time. Upon receipt of the requested information (see email communications of October 9, 2014 and January 23, 2015) we will resume our review of this matter.

48.    On April 30, 2015, Defendant Treasury again requested the additional information referenced in paragraph 42.

49.    Defendants have violated the statutory 60 day limit for granting and paying 1603 Grants as required by Section 1603(c) of ARRA.

50.    Defendants' demands for additional information relating to projects that are unrelated to the projects that are the subjects of Plaintiffs' Applications have no bearing on the determination of tax basis of the subject projects or whether the projects include specified energy property.

51.    Defendants' use of Program Guidance 2009, p. 4, Program Guidance 2010, p. 4 and Program Guidance 2011, p. 4, to demand responses to multiple sequences of questions has resulted, and continues to result, in significant and unjustified delay of the 1603 Grant payments due and owing to Plaintiffs DS 300 and DS 250.

52.    Defendants' significant and unlawful delay in making full 1603 Grant payments to Plaintiffs has adversely impacted Plaintiffs.  They have lost time value of money and interest. Owing to Plaintiffs' debt-service obligations in October 2015, Plaintiffs DS 300 and DS 250 will have to incur additional financial obligations because the partial, interim payments are insufficient to cover the debt-service obligations.

53.    Plaintiff NEER is in the business of developing and acquiring wind and solar electric generating facilities through subsidiaries and partnerships such as Desert Sunlight, DS 300, and DS 250.

54.     Plaintiff NEER is and will be directly and adversely affected in its current and future business operations by Defendants' continuing failure to make 1603 Grants and payments in the statutory 60 day period.  Specifically, Plaintiff NEER will incur charges for interest related to the delayed grants and payments and will be hindered in its ability to negotiate transactions for sales to, or participations by, third-party investors in wind and solar power projects sponsored by Plaintiff NEER.

55.     For example, the proceeds of 1603 Grants are taken into account in determining the funding of projects.  Delay in the payment of 1603 Grants imposes substantial economic costs on Plaintiff NEER in the form of interest and capital costs to carry the investment, which Plaintiff NEER would not incur if the 1603 Grants were promptly and lawfully paid.

56.     The timing of the payment of 1603 Grants is taken into account in determining the terms of transactions between Plaintiff NEER and third parties.

## COUNT I
## ACTION FOR WRIT OF MANDAMUS UNDER 28 U.S.C. § 1361

57.     Plaintiffs repeat and incorporate by reference the allegations contained in paragraphs 1 through 56.

58.     Under the terms of ARRA Section 1603(a), "[u]pon application, the Secretary of the Treasury shall, subject to the requirements of this section, provide a grant to each person who places in service specified energy property to reimburse such person for a portion of the expense of such property", and, under the terms of ARRA Section 1603(c), the Secretary of the Treasury "shall make payment" of the 1603 Grant "during the 60-day period beginning on the later of (l) the date of the application for such grant, or (2) the date the specified energy property for which the grant is being made is placed in service."  These requirements are mandatory and

non-discretionary.  Defendants may not extend the statutory 60 day period and must pay the 1603 Grant within 60 days.

59.     Plaintiffs DS 300 and DS 250 submitted 1603 Grant applications on the following dates: March 19, 2014; March 28, 2014; April 22, 2014; July 1, 2014; December 19, 2014; and December 22, 2014.

60.     Plaintiffs DS 300 and DS 250 submitted all of the attachments and substantiation requested in the 1603 Grant application instructions and Guidance.

61.     Plaintiffs DS 300 and DS 250 placed solar electric generating facilities in service, before filing the respective 1603 Grant applications, on the following dates: December 19, 2013; December 28, 2013; January 22, 2014; April 2, 2014; September 29, 2014; and November 5, 2014.

62.     More than 60 days have elapsed since Plaintiffs DS 300 and DS 250 placed in service certain qualified energy property and filed Plaintiffs' Applications.

63.     As of the date of this Complaint, Plaintiffs have received only partial, interim payments with respect to Plaintiffs' Applications.

64.     Defendants failed to comply with the 60 day mandatory grant and payment period set forth in ARRA Section 1603(c).

65.     Defendants have a ministerial duty to issue 1603 Grants and remit full payment with respect to 1603 Grant applications that have been pending for more than the statutory 60 day period.

66.     Plaintiffs have no adequate remedy at law because Defendants have failed to take final action on Plaintiffs' Applications within 60 days.

67.     Plaintiffs also have no adequate remedy at law because the interest and capital costs incurred by Plaintiffs in carrying the delayed payments cannot be recovered from Defendants by an award of pre-judgment interest or otherwise.

68.     Accordingly, this Court should issue a Writ of Mandamus, pursuant to 28 U.S.C. § 1361, directing Defendants (a) timely to comply with the mandatory, non-discretionary obligations under Section 1603 and (b) to make 1603 Grants and payment with respect to all outstanding 1603 Grant applications submitted by Plaintiffs DS 300 and DS 250, because the 60 day period set forth in ARRA Section 1603(c) has expired.

**COUNT II**
**ACTION FOR DECLARATORY AND INJUNCTIVE RELIEF UNDER THE**
**ADMINISTRATIVE PROCEDURE ACT, 5 U.S.C. § 701**

69.     Plaintiffs repeat and incorporate by reference the allegations contained in paragraphs 1 through 68.

70.     Under the terms of ARRA Section 1603(a), "[u]pon application, the Secretary of the Treasury shall, subject to the requirements of this section, provide a grant to each person who places in service specified energy property to reimburse such person for a portion of the expense of such property", and, under the terms of ARRA Section 1603(c), the Secretary of the Treasury "shall make payment" of the 1603 Grant "during the 60-day period beginning on the later of (l) the date of the application for such grant, or (2) the date the specified energy property for which the grant is being made is placed in service."  These requirements are mandatory and non-discretionary.  Defendants may not extend the statutory 60 day period and must pay the 1603 Grant within 60 days.

71.     Plaintiffs DS 300 and DS 250 submitted 1603 Grant applications on the following dates: March 19, 2014; March 28, 2014; April 22, 2014; July 1, 2014; December 19, 2014; and December 22, 2014.

72.     Plaintiffs DS 300 and DS 250 submitted all of the attachments and substantiation requested in the 1603 Grant application instructions and Guidance.

73.     Plaintiffs DS 300 and DS 250 placed solar electric generating facilities in service, before filing the respective 1603 Grant applications, on the following dates: December 19, 2013; December 28, 2013; January 22, 2014; April 2, 2014; September 29, 2014; and November 5, 2014.

74.     More than 60 days have elapsed since Plaintiffs DS 300 and DS 250 placed in service certain qualified energy property and filed Plaintiffs' Applications.

75.     As of the date of this Complaint, Plaintiffs have received only partial, interim payments with respect to Plaintiffs' Applications.

76.     Defendants failed to comply with the 60 day mandatory grant and payment period set forth in ARRA Section 1603(c).

77.     Defendants have a ministerial duty to issue 1603 Grants and remit full payment of 1603 Grants for 1603 Grant applications that have been pending for more than the statutory 60 day period.

78.     Defendants have unlawfully withheld or unreasonably delayed remitting payment of 1603 Grants for 1603 Grant applications that have been pending for more than the statutory 60 day period.

79.     Plaintiffs have no adequate remedy at law because Defendants violated their mandatory duty and failed to provide 1603 Grants and make payment on 1603 Grant applications that have been pending for more than 60 days.

80.     Plaintiffs also have no adequate remedy at law because the interest and capital costs incurred by Plaintiffs in carrying the delayed payments cannot be recovered from Defendants by an award of pre-judgment interest or otherwise.

81.     Accordingly, this Court should issue declaratory and/or injunctive relief under the Administrative Procedure Act, 5 U.S.C. § 706(1), "compel[ling] agency action unlawfully withheld or unreasonably delayed" and directing Defendants (a) timely to comply with their mandatory, non-discretionary obligations under Section 1603; (b) to make 1603 Grants and payment with respect to any and all outstanding 1603 Grant applications submitted by Plaintiffs DS 300 and DS 250; (c) not to delay payment of a 1603 Grant for other future 1603 Grant applications beyond the statutory 60 day period on the ground that Defendants require additional information to process the pending application or have not yet completed review of the application, or otherwise; (d) not to rely on Program Guidance 2009, p. 4, Program Guidance 2010, p. 4 and Program Guidance 2011, p. 4, or similar guidance to delay 1603 Grant payments beyond the statutory 60 day period; and (e) to make future 1603 Grant payments owed to direct or indirect subsidiaries of NEER on solar or wind energy projects within 60 days of the later of the filing of the applications or the placing in service of the qualified energy property.

**RELIEF REQUESTED**

WHEREFORE, Plaintiffs pray for judgment as follows:

(a)     That the Court issue a Writ of Mandamus, pursuant to 28 U.S.C. § 1361, directing Defendants timely to comply with their mandatory, non-discretionary obligations under Section 1603.

(b)     That the Court issue a Writ of Mandamus, pursuant to 28 U.S.C. § 1361, directing Defendants to make 1603 Grants and payment with respect to any and all outstanding 1603 Grant applications submitted by Plaintiffs DS 300 and DS 250.

(c)     That the Court issue declaratory and/or injunctive relief under the Administrative Procedure Act, 5 U.S.C. § 706(1), and the Declaratory Judgment Act, 28 U.S.C. § 2201, "compel[ling] agency action unlawfully withheld or unreasonably delayed" and directing Defendants timely to comply with their mandatory, non-discretionary obligations under Section 1603.

(d)     That the Court issue declaratory and/or injunctive relief under the Administrative Procedure Act, 5 U.S.C. § 706(1), and the Declaratory Judgment Act, 28 U.S.C. § 2201, "compel[ling] agency action unlawfully withheld or unreasonably delayed" and directing Defendants to make 1603 Grants and payment with respect to any and all outstanding 1603 Grant applications submitted by Plaintiffs DS 300 and DS 250, all of which have exceeded the 60 day period set forth in ARRA Section 1603(c).

(e)     That the Court issue declaratory and/or injunctive relief under the Administrative Procedure Act, 5 U.S.C. § 706(1), and the Declaratory Judgment Act, 28 U.S.C. § 2201, "compel[ling] agency action unlawfully withheld or unreasonably delayed" and, directing that, under the terms of ARRA Section 1603(c), the Defendants and each of them, their officers, agents or employees, are required to make 1603 Grants and payment with respect to any 1603 Grants at or before the conclusion of the 60 day period beginning on the later of (l) the date of the application for such 1603 Grant, or (2) the date the specified energy property for which the 1603 Grant is being made is placed in service.

(f)     That the Court issue declaratory and/or injunctive relief under the Administrative Procedure Act, 5 U.S.C. § 706(1), and the Declaratory Judgment Act, 28 U.S.C. § 2201, "compel[ling] agency action unlawfully withheld or unreasonably delayed" and directing that Defendants may not delay payment of a 1603 Grant beyond the statutory 60 day period on the ground that Defendants require additional information to process the pending application or have not yet completed review of the application.

(g)     That the Court issue declaratory and/or injunctive relief under the Administrative Procedure Act, 5 U.S.C. § 706(1), and the Declaratory Judgment Act, 28 U.S.C. § 2201, "compel[ling] agency action unlawfully withheld or unreasonably delayed" and directing that Defendants may not lawfully rely on Program Guidance 2009, p. 4, Program Guidance 2010, p. 4 and Program Guidance 2011, p. 4, and/or similar guidance to delay 1603 Grant payments beyond the statutory 60 day period.

(h)     That the Court issue declaratory and/or injunctive relief under the Administrative Procedure Act, 5 U.S.C. § 706(1), and the Declaratory Judgment Act, 28 U.S.C. § 2201, "compel[ling] agency action unlawfully withheld or unreasonably delayed" and directing that future payments of 1603 Grants due to direct or indirect subsidiaries of NEER on solar or wind energy projects must be made within 60 days of the later of the filing of the applications or the placing in service of the qualified energy property.

(i)     That Plaintiffs be allowed their costs and disbursements herein.

(j)     Providing such other relief to the Plaintiffs as the Court may consider just and proper.

Respectfully submitted,


Dated:  July 2, 2015


/s/ William F. Nelson
William F. Nelson (D.C. Bar No. 467236)
Bryan M. Killian (D.C. Bar No. 989803)
Morgan, Lewis & Bockius LLP
2020 K Street, NW
Washington, DC  20006-1806
Telephone: (202) 373-6782
William.nelson@morganlewis.com

*Attorneys for the Plaintiffs*