**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **DESERT SUNLIGHT 250, LLC, et al.**, <br><br> Plaintiffs, <br><br> v. <br><br> **JACOB J. LEW, in his official capacity as Secretary of the Treasury, et al.**, <br><br> Defendants. | Case No. 15-cv-01051 (CRC) |

**MEMORANDUM OPINION**

Plaintiffs have sued to compel the Secretary of the Treasury to reimburse them, under a federal grant program, for a portion of the costs they incurred in developing a series of renewable energy projects. Finding that the United States Court of Federal Claims has exclusive jurisdiction over the Plaintiffs' lawsuit, the Court will deny Plaintiffs' motion for summary judgment and grant the Treasury Department's motion to dismiss the case.

**I.    Background**

Congress enacted the American Recovery and Reinvestment Act of 2009 ("ARRA"), Pub. L. No. 111-5, 123 Stat. 115 (2009), in an effort to jumpstart the American economy out of the deepest recession the nation had experienced since the Great Depression. One of the Act's many aims was to encourage investment in renewable energy projects by awarding federal grants to offset project costs. To that end, Section 1603 of the Act specifies that, "[u]pon application, the Secretary of the Treasury shall, subject to the requirements of this section, provide a grant to each person who places in service a specified energy property to reimburse such person for a portion of the expense of such property as provided in subsection (b)." Id. 1603(a). And to expedite the funding, Congress imposed a deadline on the Secretary to award grants to qualified

applicants:  "The Secretary of the Treasury shall make payment of any grant under subsection (a) during the 60-day period beginning on the later of (1) the date of the application for such grant, or (2) the date the specified energy property for which the grant is being made is placed into service."  Id. 1603(c).

Plaintiffs Desert Sunlight 250, LLC, Desert Sunlight 300, LLC (collectively, "Desert Sunlight"), and NextEra Energy Resources, LLC ("NEER"), seek a writ of mandamus and declaratory and injunctive relief under the Mandamus Act, the Declaratory Judgment Act, and the Administrative Procedure Act ("APA") to enforce Section 1603's 60-day payment deadline with respect to multiple grant applications that they have filed (or intend to file) with the Treasury Department.  Desert Sunlight owns and operates 250- and 300-MW solar-energy-generating facilities near Desert Center, California.  It has invested in twenty projects covered by Section 1603 and filed applications seeking reimbursement grants for fifteen of those projects, each of which has been placed into service.  See Pls.' Mot. Summ. J. 9.  In April 2015, Desert Sunlight received notification that the Department was making partial payments on the pending applications, but would reserve further payments until the company provided additional information the agency had requested in order to verify the company's claimed cost-basis in the projects, which is used to calculate the amount of the reimbursements.  See id. at 10.  Desert Sunlight's applications sought a total of $614,825,749 in reimbursement grants under ARRA.  See Compl. ¶¶ 37–39; Pls.' Mot. Summ. J., Ex. 2 ("Pls.' Statement Material Facts") ¶ 18.  Treasury claims to have paid Plaintiffs $358,981,363 to date.  See Defs.' Mot. Dismiss 6–7.

Plaintiffs claim to have received slightly more—$360,468,007.  Pls.' Statement Material Facts ¶ 18.  These figures leave roughly $255,000,000 in dispute.[1]

NEER is in the business of developing and acquiring wind- and solar-energy-generating facilities through subsidiaries and partnerships.  Compl. ¶ 53.  It is in the process of completing and placing into service solar-energy projects for which it plans to submit applications for reimbursement grants under Section 1603.  Plaintiffs claim that as a would-be applicant, NEER is harmed by Defendants' "continuing failure to make 1603 Grants and payments in the statutory period," and that "NEER will incur charges for interest related to the delayed grants and payments and will be hindered in its ability" to secure investors for its projects.  Compl. ¶ 54.

Plaintiffs filed suit in July 2015 against the Treasury Department, as well as Secretary of the Treasury Jacob Lew and Fiscal Assistant Secretary of the Treasury David Lebryk in their official capacities, and moved for summary judgment on August 24, 2015.  Plaintiffs contend that Treasury has unlawfully refused to reimburse the full amounts claimed in their Section 1603 applications within the 60-day period prescribed by that section.  Plaintiffs specifically seek injunctive and mandamus relief to compel Defendants to comply with the requirements of Section 1603—that is, to remedy "agency action unlawfully withheld and unreasonably delayed."  Pls. Mot. Summ. J. 12 (quoting 5 U.S.C. § 706(1)).  Plaintiffs also seek declaratory relief because, they contend, "it is likely that Defendants will continue to breach those duties in connection with future Grant applications."  Id. 3.

---

[1] The government notes, however, that even if Plaintiffs prevail, any additional payment must be reduced pursuant to the Balanced Budget and Emergency Deficit Control Act of 1985, as amended, also referred to as "sequestration."  The government does not elaborate on the workings of such a reduction.  See Defs.' Reply Supp. Mot. Dismiss 5 n.1.

Treasury moved to dismiss the Complaint with prejudice for lack of subject-matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1), contending that the Tucker Act gives the Court of Federal Claims exclusive jurisdiction over Plaintiffs' claims because they are, at bottom, claims for money damages.  See Defs.' Mot. Dismiss 10.  Alternatively, the Department insists that it has complied with the statutory deadlines by making partial payments pending receipt of additional financial information to support Plaintiffs' cost-basis calculations.  Making full payment in the absence of this information, in Treasury's view, would violate its obligation under Section 1603 to verify reimbursement claims before paying out what can amount to hundreds of millions of dollars in government grants.  See id. at 24.

## II.     Standard of Review

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  A dispute is genuine only if a reasonable fact-finder could find for the nonmoving party; a fact is material only if it is capable of affecting the outcome of the litigation.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Laningham v. U.S. Dep't of Navy, 813 F.2d 1236, 1241 (D.C. Cir. 1987).  In assessing a party's motion for summary judgment, the court must "view the facts and draw reasonable inferences 'in the light most favorable to the party opposing the . . . motion.'"  Scott v. Harris, 550 U.S. 372, 378 (2007) (quoting United States v. Diebold, Inc., 369 U.S. 654, 655 (1962) (per curiam)).

Because "[f]ederal courts are courts of limited jurisdiction," it is "presumed that a cause lies outside of this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." Gammill v. U.S. Dep't of Educ., 989 F. Supp. 2d 118, 120 (D.D.C.

4

2013) (quoting Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994)) (internal quotation marks omitted). Thus, on a motion to dismiss for lack of subject-matter jurisdiction pursuant to Rule 12(b)(1), "the plaintiff bears the burden of establishing that the court has subject-matter jurisdiction." Id. (quoting Adams v. U.S. Capitol Police Bd., 564 F. Supp. 2d 37, 39–40 (D.D.C. 2008)) (internal quotation mark omitted). Although the court must "accept all of the factual allegations in the complaint as true," id. at 120–21 (quoting Jerome Stevens Pharms., Inc. v. FDA, 402 F.3d 1249, 1253 (D.C. Cir. 2005)) (internal quotation marks omitted), it "must give the plaintiff's factual allegations closer scrutiny when resolving a Rule 12(b)(1) motion than would be required for a Rule 12(b)(6) motion for failure to state a claim" because "subject matter jurisdiction focuses on the court's power to hear the claim," id. at 121 (quoting Bailey v. WMATA, 696 F. Supp. 2d 68, 71 (D.D.C. 2010)) (internal quotation marks omitted). Finally, if "a federal court concludes that it lacks subject-matter jurisdiction, the court must dismiss the complaint in its entirety." Id. (quoting Arbaugh v. Y & H Corp., 546 U.S. 500, 514 (2006)).

### III.   Analysis

The government contends that only the Court of Federal Claims may exercise jurisdiction over Plaintiffs' claims. The Court will first address whether the Court of Federal Claims is statutorily empowered to hear this case, and if so, whether its jurisdiction is exclusive under these circumstances. Because the Court concludes that the Court of Federal Claims does in fact have exclusive jurisdiction, it need not address the government's alternative argument that it has complied with Section 1603's time requirements.

#### A.   Does the Court of Federal Claims Have Jurisdiction Over Plaintiffs' Claims?

"[T]o ensure that a central judicial body adjudicates most claims against the United States Treasury," Kidwell v. Dep't of Army, Bd. for Correction of Military Records, 56 F.3d

279, 284 (D.C. Cir. 1995), the Tucker Act both waives the federal government's sovereign immunity and confers jurisdiction on the Court of Federal Claims for certain types of monetary suits against the United States, Fisher v. United States, 402 F.3d 1167, 1172 (Fed. Cir. 2005). Under that law, the Court of Federal Claims may entertain "any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1). According to the government, Plaintiffs have brought "claim[s] against the United States founded . . . upon" Section 1603, so the Court of Federal Claims is the appropriate forum for their requests for reimbursement.

The Court of Federal Claims has already adjudicated this very issue, holding that claims for entitlement to relief under Section 1603 fall within that court's Tucker Act jurisdiction. Drawing from Federal Circuit case law, the court asserted that its jurisdiction encompasses claims brought under "money-mandating" statutes and regulations—those that impose on the government "an absolute duty to make payments to any person who meets the specific requirements set forth in the statute." ARRA Energy Co. I v. United States, 97 Fed. Cl. 12, 19 (2011) ("ARRA Energy"); see also id. (explaining that Court of Federal Claims jurisdiction "turns on whether the government has discretion to refuse to make payments"). Because Section 1603 "compels the payment of money by the government" when all statutory requirements are fulfilled, jurisdiction was held to be proper in the Court of Federal Claims.[2] Id.

---

[2] The Court of Federal Claims has repeatedly reaffirmed ARRA Energy's Tucker Act holding. See RP1 Fuel Cell, LLC v. United States, 120 Fed. Cl. 288, 316 (2015); W.E. Partners II, LLC v. United States, 119 Fed. Cl. 684, 690 (2015); Clean Fuel, LLC v. United States, 110 Fed. Cl. 415, 416 (2013); LCM Energy Sols. v. United States, 107 Fed. Cl. 770, 773 (2012).

at 19. This methodology draws support from a seminal Claims Court decision explaining that Tucker Act jurisdiction exists for "varied" categories of claims seeking relief under a "specific provision of law [that] embodies a command to the United States to pay the plaintiff some money, upon proof of conditions which he is said to meet." Eastport Steamship Corp. v. United States, 372 F.2d 1002, 1007 (Ct. Cl. 1967).

As Eastport noted, one such category is "legislation which . . . can fairly be interpreted as mandating compensation for the damage sustained." Id. at 1009. Later Supreme Court decisions, in the context of their particular facts, have tended to highlight this latter jurisdiction-conferring condition. See, e.g., United States v. Mottaz, 476 U.S. 834, 851 (1986) (observing that "*damages* for the Government's past acts" is "the essence of a Tucker Act claim for monetary relief") (emphasis added). Strictly speaking, Plaintiffs do not seek damages in this case—the relief they demand would not "*substitute* for a suffered loss," Bowen v. Massachusetts, 487 U.S. 879, 895 (1988) (quoting Md. Dep't of Human Res. v. Dep't of Health & Human Servs., 763 F.2d 1441, 1446 (D.C. Cir. 1985)), but would instead satisfy an alleged statutory entitlement. In other words, Plaintiffs are not asking to be made whole for injuries suffered as a consequence of Defendants' failure to comply with the law; they seek only that very compliance. So the government misfires in arguing that the Court of Federal Claims may hear this case because Plaintiffs "seek over $250 million in money damages." Mem. Supp. Defs.' Mot. Dismiss 17.

But the Supreme Court has also recognized that "[t]here are . . . many statutory actions over which the Claims Court has jurisdiction that enforce a statutory mandate for the payment of money rather than obtain compensation for the Government's failure to pay." Bowen, 487 U.S. at 900 n.31; see also id. (emphasizing that "[t]he jurisdiction of the Claims Court . . . is not

expressly limited to actions for 'money damages'"). And even if the Court of Federal Claims could hear only claims seeking compensation, a number of federal statutory programs authorize monetary relief that is, by nature, "both specific and compensatory." Robles v. Kerry, 74 F. Supp. 3d 254, 262 (D.D.C. 2014). One such program, the Libya Claims Program, "aims to compensate victims who allegedly suffered tortious injury" at Libya's hands. Id. at 261. So it is not always true that "[w]here a plaintiff seeks an award of funds to which it claims entitlement under a statute, the plaintiff seeks specific relief, not damages." Am.'s Cmty. Bankers v. FDIC, 200 F.3d 822, 829 (D.C. Cir. 2000). A plea for relief "to which [a plaintiff] was entitled from the beginning," id., may well be cognizable in the Court of Federal Claims.

Bowen cited two statutes authorizing a form of relief that can be fairly characterized as both specific and compensatory. First was the Back Pay Act, 5 U.S.C. § 5596(b), which entitles agency employees who suffer "unjustified or unwarranted personnel action[s]" to sue for recovery of "the pay . . . which the employee normally would have earned or received during the period if the personnel action had not occurred," less any offsetting wages earned in the interim. Bowen, 487 U.S. at 906 n.42 (citing United States v. Testan, 424 U.S. 392, 405 (1976)). Second was a federal statute entitling prisoners of war to the same salary they would have received had they actively served the United States. Id. (citing Bell v. United States, 366 U.S. 393, 398 (1961)). Laws like these "attempt to compensate a particular class of persons for past injuries or labors." Id. Efforts to enforce such statutory commands naturally seek the very monetary relief authorized by Congress upon satisfaction of certain triggering conditions. Yet the Supreme Court has made clear that these cases may proceed in the Court of Federal Claims.

Case law reveals numerous other examples of ostensibly "specific" relief that may be properly sought in the Court of Federal Claims. Aside from wrongful-discharge backpay,

Eastport recognized that "a claim for compensation for flood damage authorized by statute" could be brought in that court. Eastport, 372 F.2d at 1008. Courts have also held that the Claims Court may hear requests for special annuities due to retired federal firefighters, Ellis v. United States, 610 F.2d 760, 765 (Cl. Ct. 1979); claims under "civil service medical disability regulations," Bivens v. United States, 342 Cl. Ct. 339, 342 (1985); and petitions for "restitution to those individuals of Japanese ancestry who were interned" during World War II, Kanemoto v. Reno, 41 F.3d 641, 643 (Fed. Cir. 1994).

This Court agrees with the Court of Federal Claims's settled view that requests for coercive enforcement of Section 1603's requirements qualify as "claim[s] against the United States" under an "Act of Congress" for Tucker Act purposes. 28 U.S.C. § 1491(a)(1). As with the wrongly terminated or wrongly classified governmental employee who sues for backpay, plaintiffs in essence seek "compensat[ion] . . . for past . . . labors." Bowen, 487 U.S. at 906 n.42. Having allegedly invested hundreds of millions of dollars and toiled on government-favored projects, Plaintiffs have now sued the United States for a sizeable "reimburse[ment]" from the federal Treasury. ARRA § 1603, 123 Stat. at 364. Their efforts to seek enforcement of Section 1603 for their fifteen completed applications—whether under the Mandamus Act or the APA provision authorizing reviewing courts to "compel agency action unlawfully withheld," 5 U.S.C. § 706—are therefore precisely the sort of statutory compensation claims that Bowen found cognizable in the Court of Federal Claims. In contrast, the statutory grant-in-aid program discussed in Bowen contemplated payments from the federal government "to subsidize future state expenditures" in a way that would be "fashioned in the light of the rather complex ongoing relationship between the parties." Bowen, 487 at 905, 906 n.42. These Medicaid

9

"reimbursements" were "actually advances against expenses that ha[d] not yet been incurred by the State," id. at 907, not remediation for "past injuries or labors," id. at 906 n.42.

That Plaintiffs have formally sought equitable, declaratory, and mandamus relief in this Court would not deprive the Court of Federal Claims of jurisdiction over this case. As the D.C. Circuit has instructed, "[t]he plain language of a complaint . . . does not necessarily settle the question of Tucker Act jurisdiction"; otherwise, plaintiffs could bypass the Court of Federal Claims "by converting complaints which 'at their essence' seek money damages from the government into complaints requesting injunctive relief or declaratory actions." Kidwell, 56 F.3d at 284. Courts must therefore "look to the complaint's substance, not merely its form." Id.; see also Kanemoto, 41 F.3d at 646 (holding that a plaintiff "cannot escape" Tucker Act jurisdiction "merely by framing her claim for relief in declaratory or injunctive terms" if it "at bottom seek[s] only payment"). As long as the requested "non-monetary relief . . . has 'considerable value' independent of any future potential for monetary relief," Kidwell, 56 F.3d at 284 (quoting Francis E. Heydt Co. v. United States, 948 F.2d 672, 677 (10th Cir. 1991)), and would not be "'negligible in comparison' with the potential monetary recovery," id. (quoting Hahn v. United States, 757 F.2d 581, 589 (3d Cir. 1985)), the Court must "respect the plaintiff's choice of remedies," id.

Plaintiffs argue that "equitable and declaratory relief" regarding future applications "has independent value to them," for either a permanent injunction or a declaratory judgment would enable them to "start up the Court's contempt processes" without having to bring an entirely new lawsuit. Pls.' Opp'n Defs.' Mot. Dismiss 6, 17. But contempt proceedings—like the equitable and declaratory relief that would enable them—would be worthwhile only as a means to the end of obtaining statutory reimbursements. In this context, such remedies have *no* value

"independent of any future potential for monetary relief." Kidwell, 56 F.3d at 284. In Kidwell, by contrast, altering the plaintiff's military-discharge records would have "lift[ed] some of the shame associated with failing to receive an honorable discharge" in addition to qualifying him for backpay. Id. at 285. Here, Plaintiffs could achieve everything they seek by persuading the Court of Federal Claims that they are correct on the merits, thereby securing a favorable precedent through which to extract future grant payments. As a result, the Court of Federal Claims has jurisdiction to hear Plaintiffs' plea for monetary relief, regardless of how they have styled their claims.

B.     Is the Court of Federal Claims's Jurisdiction Exclusive?

Plaintiffs insist that even if the Court of Federal Claims may exercise jurisdiction over their claims, so may this Court. The Court of Federal Claims has exclusive jurisdiction over Tucker Act claims exceeding $10,000, but "only to the extent that Congress has not granted any other court authority to hear the claims." Bowen, 487 U.S. at 910 n.48. Plaintiffs argue that § 702 of the APA has granted this Court authority to entertain all of their claims. That provision empowers federal district courts to hear (and waives the United States's sovereign immunity respecting) suits "seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity." 5 U.S.C. § 702. The Court has already concluded that Plaintiffs do not seek "money damages" as conventionally understood. So, as in Kidwell, "jurisdiction under the APA would appear to lie." Kidwell, 56 F.3d at 284.

Yet the D.C. Circuit explained in Kidwell that "a district court with otherwise appropriate jurisdiction may hear [a] claim" only if it is "something more than an artfully drafted effort to circumvent the jurisdiction of the Court of Federal Claims." Id. Kidwell articulated the artful-

pleading test discussed earlier immediately after acknowledging that jurisdiction seemed to exist under § 702 as a facial matter.  (The plaintiff sought backpay and erasure of a stigma on his military record, not substitutionary relief.)  Accordingly, in this Circuit, § 702's phrase "other than money damages" cannot be read without reference to court-shopping concerns.  This approach may sit uneasily with the Supreme Court's statement that "the exception for an action seeking 'money damages' should not be broadened beyond the meaning of its plain language." Bowen, 487 U.S. at 900.  But it could not be clearer that, post-Bowen, the D.C. Circuit has viewed a complaint's underlying substance as relevant to a proper interpretation of both the Tucker Act *and* § 702—even though the plaintiff in Kidwell had not requested "money damages" under any reading of his complaint.  This Court must assume that the D.C. Circuit understood Kidwell to be reconcilable with Bowen in all respects.

Kidwell's artful-pleading test therefore applies when assessing this Court's jurisdiction under § 702.  Because Plaintiffs' requests for declaratory and prospective injunctive relief have no value "independent of any future potential for monetary relief," Kidwell, 56 F.3d at 284, the Court of Federal Claims enjoys exclusive jurisdiction over Plaintiffs' claims.

**IV.     Conclusion**

For the foregoing reasons, the Court will deny Plaintiffs' Motion for Summary Judgment and grant Defendants' Motion to Dismiss.  An order accompanies this memorandum opinion.

                                                        CHRISTOPHER R. COOPER
                                                        United States District Judge

Date:     March 11, 2016